# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 32551

| | |
|---|---|
| P.O. VENTURES, INC., an Idaho corporation,<br><br>    Plaintiff-Respondent,<br><br>v.<br><br>THE LOUCKS FAMILY IRREVOCABLE TRUST and GEORGE LOUCKS, individually, as Trustee of the Loucks Family Irrevocable Trust,<br><br>    Defendants-Appellants. | )<br>)<br>) 2007 Opinion No. 69<br>)<br>) Boise, February 2007 Term<br>)<br>) Filed: May 1, 2007<br>)<br>) Stephen W. Kenyon, Clerk<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Kathryn A. Sticklen, District Judge.

The decision of the district court granting summary judgment to respondent is: <u>affirmed</u>.

James R. Gillespie, P.A., Boise, for appellants.

Greener Banducci Shoemaker, P.A., Boise, for respondent. Shawn P. Bailey argued.

---

TROUT, Justice

The Loucks Family Irrevocable Trust and its sole trustee, George Loucks (Loucks), appeal from the award granting P.O. Ventures (POV) summary judgment for specific performance of a land sale contract.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

POV is the developer of Arbor Ridge, a residential subdivision in Eagle, Idaho. POV began developing Arbor Ridge approximately four years ago. POV sought to purchase from Loucks, acting as the trustee of the Loucks Family Irrevocable Trust, a 14.66 acre tract of land in order to include this land in the Arbor Ridge subdivision. Allegedly in reliance on an oral agreement with Loucks that POV would purchase Loucks's property, POV obtained a new zoning designation of Arbor Ridge and Loucks's property to allow residential development of

both. On August 25, 2004, POV drafted a formal agreement reflecting a purchase price of $800,000 for Loucks's property. Loucks did not sign this agreement. Soon thereafter, Loucks received an offer to buy the same property from Rama Group, LLC (Rama), for $820,960, which Loucks rejected.

On November 6, 2004, Loucks and POV's representative, Floyd Patterson (Patterson), sat down at Patterson's mother's house to negotiate the sale of Loucks's land. Loucks's brother, John A. Loucks (Tony), was also present. Loucks came to the table with the two-page addendum (Addendum) that had been attached to Rama's earnest money agreement proposal, and the parties used that document as a template for their negotiation. Writing directly on the Addendum, Loucks and Patterson crossed out Rama's name and handwrote POV's name as the buyer; struck the printed purchase price and substituted the new, higher price of $900,000; provided for a $100,000 down payment; set a closing date of June 30, 2005, on which date payment would be due in full, together with interest at a rate of 6.5% on the unpaid balance until closing; and handwrote in that no prepayment penalty would apply. The parties left unchanged the typed provision listing the seller as "Loucks Family Irrevocable Trust, George A. Loucks, Trustee." Loucks and Patterson signed on the first page of the Addendum and wrote in the date of November 6, 2004. The handwriting next to Patterson's signature reads, "Buyer, P.O. Ventures Inc." Tony signed the document as a witness. The second page to the Addendum contained a number of typewritten terms relating to surveying and developing the property, but the only handwriting on the second page of the document is a stray checkmark of unknown origin.

On November 16, 2004, POV had an agreement (Purchase Agreement) drafted up by its attorney. The Purchase Agreement contained basically the same terms as appeared on the first page of the Addendum, but there was also a provision that all real property taxes and assessments would be prorated as of the date of closing and that the costs of closing would be split equally between the parties. Patterson signed the Purchase Agreement and sent it to Loucks for signature. Loucks refused to sign, claiming that the typed agreement did not represent the modified Addendum signed by the parties.

POV filed suit for specific performance or, alternatively, damages. While POV's first complaint attached the unsigned November 16, 2004, Purchase Agreement, POV subsequently amended its complaint with leave of court, to enforce the signed November 6, 2004, Addendum.

POV filed a motion for summary judgment which was granted by the district court. The court ordered specific performance, concluding that the Addendum included the essential terms necessary to specifically enforce a contract for the sale of land. The district court concluded that all the material terms had been agreed to on November 6 and that any changes proposed in the November 16 Purchase Agreement were minimal and did not affect the fact that the parties had already agreed to the material terms. Applying Idaho Code section 12- 120(3), the district court awarded mandatory costs and fees to POV, the prevailing party in a commercial transaction. POV then filed its memorandum of attorney fees and costs, to which Loucks objected. The district judge analyzed POV's various requests, made some deductions, and entered a decision. Loucks now appeals the award of summary judgment and the award of costs and fees.

## II.

## STANDARD OF REVIEW

Specific performance is an extraordinary remedy that can provide relief when legal remedies are inadequate. *Fullerton v. Griswold*, 142 Idaho 820, 823, 136 P.3d 291, 294 (2006). The inadequacy of remedies at law is presumed in an action for breach of a real estate purchase and sale agreement due to the perceived uniqueness of land. *Id.* The decision to grant specific performance is a matter within the district court's discretion. *Id.* When making its decision the court must balance the equities between the parties to determine whether specific performance is appropriate. *Id.*

On appeal from the grant of a motion for summary judgment, this Court's standard of review is the same as the standard used by the district court originally ruling on the motion. *Intermountain Forest Management v. Louisiana Pacific Corp.*, 136 Idaho 233, 235, 31 P.3d 921, 923 (2001). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. I.R.C.P. 56(c).

The burden of proving the absence of material facts is upon the moving party. *Thomson v. City of Lewiston*, 137 Idaho 473, 476, 50 P.3d 488, 491 (2002); *see also Petricevich v. Salmon River Canal Co.*, 92 Idaho 865, 452 P.2d 362 (1969). The adverse party, however, "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." I.R.C.P. 56(e). The moving party is therefore entitled to a judgment when the

3

nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case on which that party will bear the burden of proof at trial. *See* Thomson, 137 Idaho at 476, 50 P.3d at 491, *Badell*, 115 Idaho at 102, 765 P.2d at 127.

When an action, as here, will be tried before the court without a jury, the trial court as the trier of fact is entitled to arrive at the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences. *Intermountain Forest Management*, 136 Idaho at 235, 31 P.3d at 923. Resolution of the possible conflict between the inferences is within the responsibilities of the fact finder. *Cameron v. Neal*, 130 Idaho 898, 900, 950 P.2d 1237, 1239 (1997). This Court exercises free review over the entire record that was before the district judge to determine whether either side was entitled to judgment as a matter of law and reviews the inferences drawn by the district judge to determine whether the record reasonably supports those inferences. *Intermountain Forest Management*, 136 Idaho at 236, 31 P.3d at 924.

## III.

## DISCUSSION

### A. Award of summary judgment

The district court found that the Addendum evinced a valid, enforceable agreement covering all the material terms and bearing each party's signature. We conclude that the district court was correct and that the parties agreed to the material terms of this land sale agreement.

"Formation of a contract is generally a question of fact for the trier of fact to resolve." *Inland Title Co. v. Comstock*, 116 Idaho 701, 702, 779 P.2d 15, 16 (1989). "Formation of a valid contract requires that there be a meeting of the minds as evidenced by a manifestation of mutual intent to contract. This manifestation takes the form of an offer and acceptance." *Id.* at 703, 779 P.3d at 17. In addition, under Idaho's statute of frauds, an agreement for the sale of real property is invalid unless the agreement "or some note or memorandum thereof, be in writing and subscribed by the party charged, or by his agent." I.C. § 9-505(4); *see also Hoffman v. SV Co., Inc.*, 102 Idaho 187, 190, 628 P.2d 218, 221 (1981). "In a dispute over contract formation it is incumbent upon the plaintiff to prove a distinct and common understanding between the parties." *Inland*, 116 Idaho at 703, 779 P.3d at 17.

For a land sale contract to be specifically enforced, the contract must typically contain the minimum provisions of the parties involved, the subject matter thereof, the price or

4

consideration, a description of the property, and all the essential terms of the agreement. *Hoffman v. SV Co., Inc.,* 102 Idaho 187, 190, 679 P.2d 218, 221 (1981); *see also Snyder v. Miniver*, 134 Idaho 585, 587, 6 P.3d 835, 837 (Ct. App. 2000). The Addendum identifies Loucks and POV as the parties; identifies the land to be sold by address, acreage, tax parcel number, and a metes and bounds description; sets a purchase price of $900,000; requires $100,000 in earnest money, together with interest at 6.5%; provides a closing date, with the addition: "Balance due in Full"; and provides that no prepayment penalty shall apply. The document is signed by Patterson, Loucks, and Tony, and dated November 6, 2004. The Addendum therefore includes all of the minimum essential, material terms of a land sale contract.[1]

Loucks argues that no meeting of the minds occurred based on the difference between the November 6, 2004, Addendum and the November 16, 2004, Purchase Agreement. Loucks suggests that while the parties reached an agreement on November 6, 2004, as to certain essential material terms, other material proposed terms remained in dispute. Loucks argues that the differences between the Addendum and the Purchase Agreement demonstrate that the Addendum was not the parties' final agreement and, as such, is not specifically enforceable. In *Luke v. Conrad*, 96 Idaho 221, 526 P.2d 181 (1974), the Court declined to award specific performance where an earnest money agreement "was incomplete and not a final statement of the terms of conveyance…." *Id.* at 222, 526 P.2d at 182. In the present case, the Addendum, on its face, did not demonstrate any intent to sign a more formal document in the future. Nothing in the document suggests that the parties were simply using it as a preliminary discussion. Nothing in the document indicates that there were further terms that needed to be resolved or that the agreement was not final until a formally typed document was actually signed. The agreement, on its face, demonstrates a mutual intent to contract.

We are unpersuaded that the new terms appearing in the November 16 Purchase Agreement demonstrate that material terms remained in dispute at the time the parties signed the Addendum on November 6. This Court has stated that for a contract to be specifically enforceable, it "must be complete, definite and certain in all of its material terms, or contain provisions which are capable in themselves of being reduced to certainty." *Giacobbi Square v.*

---

[1] We note that we are not presented with any questions related to the second page of the Addendum. The essential terms are all contained on the first page, which was signed by the parties, and form the content of the agreement reached by the parties.

*PEK Corporation*, 105 Idaho 346, 348, 670 P.2d 51, 53 (1983) (emphasis omitted). Certainly, the November 6 Addendum does not refer to proration of property taxes or sharing closing costs, as does the November 16 Purchase Agreement. There is nothing in the record, together with reasonable inferences, that demonstrates these terms were critical to the transaction or critical to these parties in particular, and consequently the terms are not material.

The additional terms in the November 16 Purchase Agreement have no bearing on the completed agreement that had already been reached. By Loucks own admission, the Purchase Agreement does not alter the material terms presented in the Addendum of the property description, purchase price, down payment, closing date, and interest. The Addendum is clear on the point that Loucks would receive $900,000 for his property without any offsets or reductions, and that he would receive that sum on the day of closing. Any other terms that POV later sought to include in the Purchase Agreement are not binding. It is the Addendum, not the Purchase Agreement, that POV seeks to specifically enforce. The district court properly found that once POV demonstrated that the Addendum was complete, final, and specifically enforceable, the burden shifted to Loucks to demonstrate otherwise. The district court did not err in concluding that Loucks failed to offer evidence to show that no meeting of the minds occurred on November 6, 2004.

**B. Award of costs and fees**

Loucks challenges the reasonableness of the costs and fees awarded to POV by the district court. "An award of attorney fees under I.C. § 12-120(3) is reviewed for an abuse of discretion." *Fox v. Mountain West Elec., Inc.*, 137 Idaho 703, 712, 52 P.3d 848, 857 (2002). The Court applies a three-factor test to determine (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the boundaries of this discretion and consistent with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *Id.*

Idaho Rule of Civil Procedure 54(e)(3) directs the trial court to consider certain criteria in setting the amount of fees to be awarded to the prevailing party.[2] The trial court correctly

---

[2] Idaho Rule of Civil Procedure 54(e)(3) states:

> Amount of Attorney Fees. In the event the court grants attorney fees to a party or parties in a civil action it shall consider the following factors in determining the amount of such fees:

6

perceived the amount of fees to be awarded as an issue of discretion, and then explicitly considered each criterion listed under Rule 54(e)(3). In addition to the trial court's methodical evaluation of the criteria listed by Rule 54(e)(3), the court reviewed the itemized memoranda and affidavits of costs and removed from the award costs for attorney time it deemed excessive. The trial court's review of fees complies with Rule 54(e)(3) and demonstrates an exercise of reason. We conclude the trial judge did not abuse her discretion in determining the amount of attorney fees to be awarded POV.

Loucks also argues the trial court erred in awarding paralegal costs to POV because POV provided no certification that the person performing paralegal services fell within the guidelines of Rule 54(e)(1). Rule 54(e)(1) provides that "[i]n any civil action the court may award reasonable attorney fees, which at the discretion of the court may include paralegal fees, to the prevailing party…." I.R.C.P. 54(e)(1). In this case, the trial judge applied Rule 54(e)(1)'s restriction that fees may only be awarded for costs associated with attorney and paralegal work, distinguishing such costs from those incurred for clerical work. The trial judge evaluated POV's initial submission of costs under the Rule and struck those items that were not properly paralegal work. The trial court's analysis demonstrates a proper and reasonable exercise of discretion under Rule 54(e)(1).

Finally, Loucks asserts that Rule 54(d)(1)(C)(9) allows the prevailing party to recover the reporting and transcribing costs for only one deposition taken in a case, rather than for each deposition, as the court allowed. "The question of a trial court's compliance with the rules of civil procedure relating to the recovery of attorney fees or costs is one of law upon which an

---

(A) The time and labor required.
(B) The novelty and difficulty of the questions.
(C) The skill requisite to perform the legal service properly and the experience and ability of the attorney in the particular field of law.
(D) The prevailing charges for like work.
(E) Whether the fee is fixed or contingent.
(F) The time limitations imposed by the client or the circumstances of the case.
(G) The amount involved and the results obtained.
(H) The undesirability of the case.
(I) The nature and length of the professional relationship with the client.
(J) Awards in similar cases.
(K) The reasonable cost of automated legal research (Computer Assisted Legal Research), if the court finds it was reasonably necessary in preparing a party's case.

7

appellate court exercises free review." *J.R. Simplot Co. v. Chemetics Intern., Inc.*, 130 Idaho 255, 257, 939 P.2d 574, 576 (1997). Rule 54(d)(1)(C)(9) allows a prevailing party to recover "[c]harges for reporting and transcribing of a deposition taken in preparation for trial action, whether or not read into evidence in the trial of an action." The district court found Loucks's challenge frivolous based upon *Lovey v. Regence Blueshield of Idaho*, 139 Idaho 37, 72 P.3d 877 (2003), which interpreted the rule in question to allow recovery "for reporting and transcribing *depositions* and for one copy of the depositions…." *Id.*, 44-45 n. 4, 884-85 n. 4 (emphasis added). This Court's decision in *Lovey* confirms a common sense reading of Rule 54(d)(1)(C)(9), interpreting the reference to "a deposition" to mean any deposition taken in a particular case. The district court correctly concluded the prevailing party is not limited to recovery of costs for the taking of a single deposition.

## IV.

## CONCLUSION

The district court's decision granting summary judgment to POV and awarding attorney fees and costs is affirmed in full. As the prevailing party in a commercial transaction, POV is entitled to attorney fees on appeal under I.C. § 12-120(3), together with its costs.

Chief Justice SCHROEDER and Justices EISMANN, BURDICK and JONES **CONCUR**.

---

(L) Any other factor which the court deems appropriate in the particular case.